## CORRECTED

# In the United States Court of Federal Claims

No. 08-195T

(Filed: February 25, 2011)

| | |
|---|---|
| **DOMINION RESOURCES, INC.,** | ) Corporate tax case; capitalization of imputed interest ) on the basis of property temporarily removed from ) service that otherwise would be used for the produc- ) tion of income, which temporary removal occurs in |
| **Plaintiff,** | ) connection with the installation or construction of a ) capitalized improvement to the income-producing |
| **v.** | ) property; validity of Treas. Reg. § 1.263A-11(e)(1) ) (ii)(B); Section 702(2)(A) of the Administrative |
| **UNITED STATES,** | ) Procedure Act;  application of the "substantial ) variance" doctrine to preclude consideration of |
| **Defendant.** | ) the retroactivity of Treas. Reg. § 1.263A-11(e)(2); ) alleged mistake in settlement agreement |

Eric R. Fox, Ivins, Phillips, & Barker, Chartered, Washington, D.C., for plaintiff. With him on the briefs were Leslie J. Schneider and Patrick J. Smith, Ivins, Phillips & Barker, Chartered. Washington, D.C.

Carl D. Wasserman, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for the defendant. With him on the briefs were John A. DiCicco, Assistant Attorney General, Steven I. Frahm, Chief, and Mary M. Abate, Assistant Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Judge.

This case presents an issue of first impression concerning the validity and application of the Treasury Department's associated-property rule for capitalizing interest on a taxpayer's installation or construction of improvements or additions to property used to generate income. The associated-property rule relates to property temporarily removed from service in connection with the installation or addition of an improvement, and, in effect, requires the capitalized cost of the improvement to include both direct expenditures for the improvement and imputed interest on the basis of the property temporarily removed from service, for the time of that removal.

The plaintiff, Dominion Resources, Inc. ("Dominion" or "Dominion Resources"), is a Virginia corporation whose primary business is providing electric power and natural gas to individual and commercial customers.  Stipulation of Facts ("Stipulation" or "Stip.") ¶¶ 13, 14. In 1996, a Dominion subsidiary replaced certain burners in two of its electric generating plants,

one located in Virginia and the other located in West Virginia, and had to temporarily remove
the generating units from service in the process of making the replacement.  Stip. ¶¶ 15-19, 42-
46.  Under 26 U.S.C. ("I.R.C.") § 263A and its accompanying regulations, Dominion had to treat
at least some of the costs of those improvements as capital expenditures rather than as amounts
deductible from its 1996 income.

Subsection 263A(f) also required Dominion to capitalize interest on debt directly and
indirectly related to the plants' improvements.  Subparagraph 263A(f)(2)(A) establishes
allocation rules for such capitalization of interest.  The first such allocation rule provides that
"interest on any indebtedness directly attributable to production expenditures with respect to
such property shall be assigned to such property."  I.R.C. § 263A(f)(2)(A)(i).  Application of that
direct-attribution rule is not in dispute.  The second allocation rule, however, provides that
"interest on any other indebtedness shall be assigned to such property to the extent that the
taxpayer's interest costs could have been reduced if production expenditures (not attributable to
indebtedness described in clause (i)) had not been incurred."  I.R.C. § 263A(f)(2)(A)(ii).  This
indirect-attribution rule is the statutory crux of this case.

The "associated-property rule" set out in 26 C.F.R. ("Treas. Reg.") § 1.263A-11(e)
(1)(ii)(B) requires that, when real property is temporarily withdrawn from service to install or
construct an improvement, as happened with the boilers and associated generating units to
accomplish installation of the new burners,[1] the adjusted basis of that property (termed
"associated property") must be included in the indirect-attribution calculation.  Dominion
Resources has challenged the validity of Treas. Reg. § 1.263A-11(e)(1)(ii)(B) as applied to its
improvements, arguing that the regulation is inconsistent with the statutory text of Section 263A
and also was adopted in contravention of the requirements of the Administrative Procedure Act.

Secondary contentions are also at issue.  If unsuccessful on its primary claims, Dominion
alternatively seeks retroactively to invoke a so-called "de minimis" rule, Treas. Reg. § 1.263A-
11(e)(2), as applied to the improvement made at one of its plants.[2]  The government has also

---

[1]The parties agree that the boilers and associated generating units qualify as real property
under Treas. Reg. § 1.263A-8(c)(1), (3).

[2]The de minimis rule states that for purposes of Treasury Reg. § 1.263A-11(e)(1)(ii)

> the total costs of all associated property for an
> improvement unit (associated property costs) are excluded
> from the accumulated production expenditures for the
> improvement unit during its production period if, on the
> date the production period of the unit begins, the taxpayer
> reasonably expects that at no time during the production
> period of the unit will the accumulated production
> expenditures for the unit, determined without regard to the
> associated property costs, exceed 5 percent of the
> associated property costs.

filed a counterclaim, arguing that a settlement agreement between it and Dominion should be reopened and that Dominion should have capitalized more interest in 1996 than the amount agreed by the parties in the settlement.

The parties have presented these competing contentions to the court by way of cross-motions for summary judgment.

## STATEMENT OF THE CASE[3]

### A.  *Dominion's Improvements*

Dominion Resources generates and sells electrical power to individual and commercial customers.  Stip. ¶¶ 13, 14.  In 1996, its subsidiary, the Virginia Electric & Power Company, owned and operated electric generating units in Virginia and West Virginia that included two coal-fired electric generating complexes, the Possum Point Power Station ("Possum Point") and the Mount Storm Power Station ("Mount Storm").  Stip. ¶¶ 15, 42.  Possum Point, in Virginia, encompassed six independent generating units, two of which were retired in the early 1990s, and Mount Storm, in West Virginia, contained three independent generating units.  Stip. ¶¶ 16, 43.

In 1996, Dominion performed renovations at Possum Point and Mount Storm, replacing certain existing coal burners in the plants' boilers with low-nitrous-oxide burners to comply with requirements of the Clean Air Act, 42 U.S.C. §§ 7401-7671q.  Stip. ¶¶ 15, 18, 42, 45.  Replacing the burners required that Dominion temporarily take out of service the Unit 4 generating plant at Possum Point and the Unit 3 generating plant at Mount Storm.  Stip. ¶¶ 19, 46.  The unit at Possum Point was out of service from March 9, 1996 to May 13, 1996, and the unit at Mount Storm was out of service from September 6, 1996 to December 2, 1996.  Stip. ¶¶ 19, 46.

### B.  *Relevant Statutes and Regulations*

Stated most simply, the central question at issue in this case is how much accrued interest Dominion Resources had to capitalize, rather than deduct as an expense, in 1996, as a result of its renovation of the Possum Point and Mount Storm plants.  Several sections of the Internal Revenue Code and of Treasury Regulations bear on that question.  Notably, neither the main issue in this case nor any of the secondary issues would arise if Dominion had a capital structure that was predicated only on equity, without any debt.  Equity assuredly has an economic cost, but the several economic policy arguments made by the parties, particularly those relating to "avoided cost," are constrained to debt on which interest is being paid.

---

Treas. Reg. § 1.263A-11(e)(2).  Essentially, the de minimis rule excludes the basis of associated property from the indirect-attribution calculation of interest to be capitalized regarding an improvement, where the production expenditures for the improvement taken alone are less than 5 percent of the associated property costs.

[3]The Statement of the Case is drawn from extensive stipulations of fact filed by the parties, along with the voluminous documentary exhibits appended to the stipulations.

The law provides that a taxpayer can generally deduct from its taxable income "all interest paid or accrued within the taxable year on indebtedness." I.R.C. § 163(a). However, the cost of creating or increasing the value of property must be capitalized rather than deducted. Section 263 sets forth the general rules for capitalizing expenditures rather than deducting them. *See* I.R.C. § 263(a)(1) ("No deduction shall be allowed for . . . [a]ny amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate[, subject to specified exceptions].").  Interest can be such a capitalized cost. *See Commissioner v. Breyer*, 151 F.2d 267, 272 (3d Cir. 1945); *Eskimo Pie Corp. v. Commissioner*, 4 T.C. 669, *aff'd*, 153 F.2d 301 (3d Cir. 1946).  Dominion Resources' generating units are treated as capital investments under this statute. Stip. ¶¶ 17, 44 (noting that the parties agree that the Possum Point and Mount Storm generating units constitute real property).

Previously, the general framework provided by Section 263 was supplemented by I.R.C. § 189, adopted in 1976.  Section 189 required a taxpayer to capitalize interest on debt accrued for real property construction.  *See* I.R.C. § 189(a) (1982) ("Except as otherwise provided . . . , no deduction shall be allowed for real property construction period interest and taxes."); I.R.C. § 189(e) (1982) ("The term 'real property construction period interest and taxes' means all . . . interest paid or accrued on indebtedness incurred or continued to acquire, construct, or carry real property, and . . . real property taxes, to the extent such interest and taxes are attributable to the construction period for such property and would be allowable as a deduction . . . .").  The Secretary of the Treasury was directed to prescribe regulations "provid[ing] for the allocation of interest to real property under construction," I.R.C. § 189(e) (1982), but regulations were never promulgated, and Section 189 was repealed and replaced in 1986.  *See* Pub. L. No. 99-514, § 803(b)(1), 100 Stat. 2085 (Oct. 22, 1986).

In 1986, Section 189 was supplanted by Section 263A, which laid out a so-called uniform-capitalization ("UNICAP") structure for the capitalization of property "produced by the taxpayer" or "acquired for resale."  I.R.C. § 263A(b).  The Section is lengthy and complex, cluttered with a myriad of special provisions concerning, among other topics, "[r]esearch and experimental expenditures," I.R.C. § 263A(c)(2), production of "[t]imber and certain ornamental trees," I.R.C. § 263A(c)(5), activities of "citrus and almond growers," I.R.C. § 263A(d)(3)(C), and activities of "free[]lance authors, photographers, and artists."  I.R.C. § 263A(h).  Nonetheless, none of the special provisions and exceptions apply to Dominion.  Rather, Dominion's improved burners are subject to the overarching provisions of Section 263A, which pertain to "property produced by the taxpayer."  *See* I.R.C. § 263A(b)(1) ("Except as otherwise provided in this section, this section shall apply to . . . [r]eal or tangible personal property produced by the taxpayer.").  The costs of producing those improvements must be capitalized rather than deducted.  I.R.C. § 263A(a)(1)(B) ("[A]ny costs described in [Paragraph 263A(a)(2), which are not inventory costs] . . . shall be capitalized.").  Those costs include both the "direct costs of [producing] such property" — *e.g.*, the amount the taxpayer had to spend to produce the property, such as buying parts or production equipment — and "such property's proper share of those indirect costs . . . part or all of which are allocable to such property." I.R.C. § 263A(a)(2).

Interest as a cost is addressed by Subsection 263A(f).  That Subsection begins by providing that interest is to be capitalized only in certain cases.  Paragraph (1) of Subsection

263A(f) provides:

> (1) Interest capitalized only in certain cases.—Subsection (a)
> shall *only* apply to *interest costs which are*—
> (A)  paid or incurred during the production period, and
> (B)  *allocable to property which is described in subsection*
> *(b)(1)* and which has—
> > (i)   a long useful life,
> > (ii)  an estimated production period exceeding 2 years, or
> > (iii) an estimated production period exceeding 1 year and
> > a cost exceeding $1,000,000.

I.R.C. § 263A(f)(1) (emphasis added).  The cross-reference in this Paragraph to a provision of the same Section, Paragraph 263A(b)(1), is to statutory text specifying that the entirety of Section 263A, including Subsection (f), applies to "[r]eal or tangible personal property produced by the taxpayer."  I.R.C. § 263A(b)(1).

"Allocation rules" are set out in Paragraph 263A(f)(2).  Clause 263A(f)(2)(A)(i) pertains to direct allocation and is not in dispute.  In addressing indirect allocation, however, Clause 263A(f)(2)(A)(ii) provides that "*interest* on [indebtedness which is not directly attributable to property production expenditures] *shall be assigned to such property* [whose costs are required to be capitalized under subsection (a)] *to the extent that the taxpayer's interest costs could have been reduced if production expenditures* (not attributable to indebtedness [that is directly attributable to production expenditures]) *had not been incurred*." *Id.* (emphasis added).[4]  In short, a taxpayer must capitalize interest on the amount of its unrelated debt equal to the "incurred" "production expenditures" for the project.  In effect, had "production expenditures" not been "incurred," the funds used to make those expenditures would have been available to pay down the taxpayer's general debt.  Because the debt was not paid off, interest accrued on it.  This interest can thus be seen as a "cost" of producing property that must be capitalized under Section 263A(a)(2).

Production expenditures are defined as "the costs (whether or not incurred during the production period) required to be capitalized under [Section 263A(a)] with respect to the property."  I.R.C. § 263A(f)(4)(C).  Expenditures for the production of improvements, such as

---

[4]To illustrate with an example, suppose in a year a taxpayer expends $100,000 to produce property and carries $1,000,000 of unrelated debt at 5% interest compounded once per year.  At the end of the year, the taxpayer would have accrued $50,000 of interest on the principal million-dollar debt.  However, if instead of spending $100,000 to produce property, the taxpayer had spent the $100,000 to pay his loan down to $900,000 before that year's interest began to accrue, the 5% interest rate would have only yielded $45,000 of interest.  So, as a result of the taxpayer spending $100,000 to produce property, the taxpayer could also be said to have accrued $5,000 of interest he would not have otherwise have had if he had used the $100,000 to pay down his debt.  *See*, *e.g.*, Treas. Reg. § 1.263A-9(g)(5)(iii) (Examples (i) and (ii)) (setting out applications of the indirect-cost allocation principles in the setting of a consolidated group of companies with limited outside borrowing).

Dominion's improved burners, are further defined in Treas. Reg. § 1.263A-11(e)(1)(ii)(B), which states, "[A]ccumulated production expenditures with respect to the improvement consist of . . . [,] [i]n the case of an improvement to a unit of real property . . . the adjusted basis of any . . . property that . . . must be temporarily withdrawn from service to complete the improvement (["]associated property["]) . . . if . . . the associated property directly benefits from the improvement, or the improvement was incurred by reason of the associate property." The basis of the associated property need not be included in the production expenditures, however, if "the taxpayer reasonably expects that at no time during the production period of the unit will the [other] accumulated production expenditures . . . exceed [five] percent of the associated property costs." Treas. Reg. § 1.263A-11(e)(2) ("de minimis rule").

## C.  *Effect on Dominion*

For the purposes of tallying the interest to be capitalized, Treas. Reg. § 1.263A-11(e)(1)(ii)(B) required Dominion to include in its production expenditures not just the amount Dominion had to spend to install new burners, but also the adjusted basis of the boilers and associated generating units that it had temporarily removed from service to accomplish the installation. Under the Treasury Regulation, those aggregated expenditures determined both how much of Dominion's general debt could have been reduced had the burner improvements not been made and how much production cost should be attributed to taking previously-capitalized components temporarily out of service to make the improvement. Interest that accrued on that debt had to be capitalized. *See* I.R.C. § 263A(f)(2)(A)(ii). The parties agree that Treas. Reg. § 1.263A-11(e)(1)(ii)(B) plainly requires the basis of the boilers and associated generating units to be included in the "production expenditures" for the burners, for the temporary period the boilers were out of service. However, Dominion argues that the inclusion of the adjusted basis of the boilers and associated generating units in "production expenditures" violates the allocation rule set forth in Clause 263A(f)(2)(A)(ii), because the basis of the boilers could not have been used to reduce debt if Dominion had not replaced the burners. *See* Pl.'s Br. in Support of Mot. for Summary Judgment ("Pl.'s Mot.") at 7-8. Dominion also contends that the inclusion of the basis is inconsistent with the definition of "production expenditures" as defined in Subparagraph 263A(f)(4)(C). *Id.* at 8. Implicit in this latter contention is the concept that the "property" subject to the capitalization rules of Section 263A consists of the specific improvement, *i.e.*, the new burners, and not the overall generating units being improved by the new burners. *See* Hr'g Tr. 5:15-24 (Nov. 23, 2010).[5] Dominion finally argues that Treas. Reg. § 1.263A-11(e)(1)(ii)(B) was adopted contrary to the requirements of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). Pl.'s Mot. at 33.

## D.  *Settlement Agreement*

Dominion and the Internal Revenue Service ("IRS") disputed the amount of taxes Dominion owed for the 1996 year, but ultimately they reached a settlement agreement as to most of their issues, effective August 3, 2007. *See* Stip. Ex. 1 (Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment, Form 870-AD

---

[5]Further citations to the transcript of the hearing held on November 23, 2010, will not include the date.

("2007 Settlement")); Stip. ¶ 6.  In the settlement, Dominion reserved the right to timely file a claim for refund with respect to the "amount of interest properly capitalized by the Internal Revenue Service under [S]ection 263 of the Internal Revenue Code of 1986 with respect to 'associated property,' as defined in the Treasury Regulation § 1.263A-11(e), and any correlative adjustments for the years 1995 through and including 1998."  Stip. Ex. 1 at 1.  Upon acceptance of the settlement, the Commissioner of Internal Revenue could only reopen the case if there were "fraud, malfeasance, concealment, or misrepresentation of a material fact[,] an important mistake in mathematical calculation[,] a deficiency or overassessment resulting from adjustments made under Subchapters C and D of Chapter 63 . . . [, or] an excessive tentative allowance of a carryback provided by law."  *Id.* at 2.

E.  *Procedural Posture*

Dominion timely exercised its right to file a claim for refund relating to the amount of interest capitalized with respect to associated property on October 1, 2007, asking for refund of $297,699.00, on the grounds that the associated-property rule was improper because the basis of its boilers and associated generating units did not actually reflect "production expenditures" within the meaning of I.R.C. § 263A(f)(2) and Treas. Reg. § 1.263A-9 (describing an "avoided cost method" for deriving production expenditures.).  *See* Stip. Ex. 2, at 4 (Form 1120X); Stip. ¶¶ 9-10.  The IRS rejected Dominion's claim for a refund.  *See* Stip. ¶ 11.

Dominion filed its complaint in this court on March 20, 2008, asking for the same requested refund amount plus interest.  Compl. ¶¶ 18-19.  In its briefs, the government has not disputed that the $297,699.00 figure, plus interest, is the proper refund if Dominion prevails on its primary claim.

The government filed a counterclaim, asserting that the settlement reached between Dominion and the IRS was mistaken because "the IRS did not previously capitalize enough interest on associated property for [Dominion Resources] for the 1996 tax year" and asking for "the additional tax and interest resulting from the correct calculation of capitalized interest on associated property."  First Am. Answer and Countercl. ¶¶ 27, 29.  Dominion argues that the counterclaim is improper and the amount of interest capitalized cannot be revisited because none of the requirements for reopening the 2007 Settlement have been met.  Pl.'s Br. in Reply to Def.'s Opp'n to Pl.'s Mot. for Summary Judgment and in Opp'n to Def.'s Cross-Mot. ("Pl.'s Reply") at 30.

On November 2, 2009, Dominion amended its complaint, seeking retroactively to invoke the de minimis rule as applied to the Mount Storm project in the event that its claim challenging the associated-property rule was unsuccessful.  Dominion noted that it had originally capitalized the cost of improving the Mount Storm burners.  Resp. to Def.'s First Am. Answer and Countercl. and Am. to Pl.'s Compl. ("Am. to Pl.'s Compl.") ¶ 20.  The Mount Storm improvements were estimated to cost $11,026,000.00, and the basis of the associated property related to the project was $131,820,854.00.  *Id.* ¶¶ 21, 22.  After Dominion filed its 1996 return, it contended that the cost of the Mount Storm improvement project should have been deducted as a repair rather than being capitalized.  The 2007 Settlement between Dominion and the IRS resolved this issue by treating 50% of the cost as a repair and 50% of the cost as a capital

7

investment.  *See id.* ¶ 23.

Originally, Dominion had determined how much interest it had to capitalize because of the Mount Storm project by calculating interest accrued on an amount of debt equal to 100% of the costs of the Mount Storm improvements (*i.e.*, treating 100% of the costs as a capital investment).  The 2007 Settlement, however, allocated 50% of the costs, including interest, to the capitalized cost of the improvements and 50% to a deductible repairs expense.  Am. to Pl.'s Compl. ¶ 24.  Half of the estimated costs of improvements would have been $5,513,000.00, which is less than five percent of the $131,820,854.00 basis in the associated property related to the project.  Therefore, Dominion argues, the Mount Storm project should be subject to the de minimis rule set out in Treas. Reg. § 1.263A-11(e)(2).  *Id.* ¶ 25.  Application of the de minimis rule would mean that the basis of the property associated with the Mount Storm improvements would not be treated as a "production expenditure" and would be fully deductible.  The government contests Dominion's position, arguing that the de minimis rule cannot be applied retroactively.  *See* Def.'s Cross-Mot. for Summary Judgment and Opp'n to Pl.'s Mot. for Summary Judgment ("Def.'s Cross-Mot.") at 42.

## JURISDICTION

"A federal court's jurisdiction must be established as a threshold matter before the court may reach the merits of any action."  *Riser v. United States*, 93 Fed. Cl. 212, 215 (2010) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998)).  The plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim.  *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

Through the Tucker Act, Congress has conferred on this court "jurisdiction to render judgment upon any claim against the United States founded upon either the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  A suit seeking a refund of taxes paid is included within this grant.  *See Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007-08 (Ct. Cl. 1967), *abrogated in part on other grounds by Malone v. United States*, 849 F.2d 1441, 1444-45 (Fed. Cir. 1988); *cf.* 28 U.S.C. § 1346(a)(1) (providing that district courts shall have jurisdiction concurrent with the Court of Federal Claims to consider tax-refund suits).  With limited exceptions, tax cases in this court and in district courts must be styled as claims for a refund of taxes that have been paid in full.  *See Shore v. United States*, 9 F.3d 1524, 1526 (Fed. Cir. 1993) ("Where the principle tax deficiency has not been paid in full, such tax refund claims are dismissed.").

To pursue a tax refund suit, a plaintiff must first file a tax refund claim with the IRS.  I.R.C. § 7422(a).[6]  The claim filed with the IRS must "set forth in detail each ground upon which

---

[6]Section 7422(a) provides:

> No suit or proceeding shall be maintained in any court for
> the recovery of any internal revenue tax alleged to have

a . . . refund is claimed and facts sufficient to apprise the Commissioner [of Internal Revenue] of the exact basis thereof." Treas. Reg. § 301.6402-2(b)(1).[7]  "Courts have long interpreted [I.R.C.] § 7422(a) and Treasury Reg. § 301.6402-2(b)(1) as stating a 'substantial variance' rule which bars a taxpayer from presenting claims in a tax refund suit that 'substantially vary' the legal theories and factual bases set forth in the tax refund claim presented to the IRS." *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000) (citing *Cook v. United States*, 599 F.2d 400, 406 (Ct. Cl. 1979)).  "In short, to be addressed by a court, both the legal and factual grounds for a refund claim must first have been presented by the taxpayer to the IRS."  *Marandola v. United States*, 76 Fed. Cl. 237, 243 (2007), *appeal dismissed*, 518 F.3d 913 (Fed. Cir. 2008).  A "legal theory not expressly or impliedly contained in the application for refund cannot be considered by a court in which a suit for refund is subsequently initiated." *Lockheed Martin*, 210 F.3d at 1371 (quoting *Burlington N., Inc. v. United States*, 684 F.2d 866, 868 (Ct. Cl. 1982)).  However, as long as the "claim fairly apprises the Commissioner of the ground on which recovery is sought, then the claim is adequate for the purposes of bringing suit under section 7422(a)."  *Burlington N.*, 684 F.2d at 869.  The taxpayer bears the burden of establishing that it sufficiently apprised the IRS of the same grounds and facts on which the taxpayer bases its claim before the court.  *See Ottawa Silica Co. v. United States*, 699 F.2d 1124, 1138-39 (Fed. Cir. 1983).

## STANDARDS FOR DECISION

### A.  De Novo *Proceeding*

"A tax refund suit is a *de novo* proceeding, in which the plaintiff bears the burden of proof, including both the burden of going forward and the burden of persuasion."  *Gingerich v. United States*, 77 Fed. Cl. 231, 240 (2007) (quoting *Sara Lee Corp. v. United States*, 29 Fed. Cl. 330, 334 (1993)); *see also Marandola*, 76 Fed.Cl. at 244.  "A plaintiff who is claiming a tax refund must prove [its] case by a preponderance of the evidence."  *Ebert v. United States*, 66 Fed. Cl. 287, 291 (2005) (citing *Cook v. United States*, 46 Fed. Cl. 110, 116 (2000)).

---

been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary [of the Treasury], according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

I.R.C. § 7422(a).

[7]Treas. Reg. § 301.6402-2(b)(1) specifies that "[n]o refund . . . will be allowed . . . except upon one or more of the grounds set forth in a claim [made to the Internal Revenue Service] . . . . A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit."

B.  *Summary Judgment*

Summary judgment is appropriate when the pleadings and the parties' submissions "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Rule 56(c)(1) of the Rules of the Court of Federal Claims ("RCFC"); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).  An issue is "genuine" only if it "may reasonably be resolved in favor of either party."  *Id*. at 250.  A material fact is one "that might affect the outcome of the suit under the governing law."  *Id*. at 248.

The moving party for summary judgment carries the burden of establishing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, the court must view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Corp.*, 475 U.S. 574, 587-88 (1986).  If no rational trier of fact could find for the non-moving party, summary judgment may be appropriate.  *Id*. at 587.  When considering cross-motions for summary judgment, courts evaluate each motion on its own merits, and denial of both motions is appropriate if genuine disputes over material facts exist.  *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987).

In this instance, in deciding the parties' cross-motions for summary judgment, the court has the benefit of the parties' extensive stipulations of fact.

## ANALYSIS

### I.  APPLICABILITY OF THE INTEREST-CAPITALIZATION PROVISIONS OF I.R.C. § 263A

This case turns on the applicability of the interest-capitalization provisions of I.R.C. § 263A.  Because the parties' dispute centers on the requirements of the associated-property rules of Treas. Reg. § 1.263A-11(e)(1)(ii)(B), and because associated property is not a term used in Section 263A, much of the argument concerns whether the Treasury Regulation is a permissible interpretation and application of the statute.  In that respect, the court follows the precepts explicated in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984), *viz.*:

> When a court reviews an agency's construction of a statute which it administers, it is confronted with two questions.  First, always, is the question whether Congress has spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. . . . [I]f the statute is silent or ambiguous with respect to a specific issue, the [second] question for the court is whether the agency's answer is based on a permissible construction of the statute.

These questions are frequently referred to as "*Chevron* Step One" and "*Chevron* Step Two." They apply to Treasury Regulations just as they do to rules adopted by other federal agencies charged with administering statutes. *See Mayo Found. for Med. Educ. & Research v. United States*, __ U.S. __, __, 131 S.Ct. 704, 713 (2011) (applying the precepts of *Chevron* to review and application of Treasury Regulations and noting that "[t]he principles underlying our decision in *Chevron* apply with full force in the tax context").[8]

### A. *Statutory Interpretation* – Chevron *Step One*

Dominion principally argues that Treas. Reg. § 1.263A-11(e)(1)(ii)(B) fails *Chevron* Step One because it is inconsistent with the text of two provisions in I.R.C. § 263A. First, Dominion argues that the regulation is inconsistent with I.R.C. § 263A(f)(2)(A)(ii), which states, "In determining the amount of interest required to be capitalized under [Section 263A(a)] with respect to any property[,] . . . interest on any . . . indebtedness [not directly attributable to production expenditures] shall be assigned to such property to the extent that the taxpayer's interest costs could have been reduced if production expenditures (not attributable to indebtedness described in [Clause 263A(f)(2)(A)(i)]) had not been incurred." Pl.'s Mot. at 7-8. Second, Dominion argues that the regulation is inconsistent with Subparagraph 263A(f)(4)(C), which defines "production expenditures" as "the costs (whether or not incurred during the production period) required to be capitalized under [Subsection 263A(a)] with respect to the property." *Id.* at 8-11. These specific arguments each relate back to the term "property" as it is used in Subsection 263A(a), which term is generally described and limited in Subsection 263A(b), which is headed "Property to which [S]ection applies." Analytically, the definition of "property" as used in Section 263A is critical to the application of the Section generally and thus should be addressed first as a logical matter. The next step in the sequential chain should focus on the statutory usage of "production expenditures" related to property, which correlates to Dominion's second argument. Production expenditures are explicitly embedded in the indirect-attribution rules which are the basis of Dominion's first argument. In the ensuing analysis, the court consequently has reversed the order of the arguments presented by the parties.

---

[8]*Chevron* Step Two, *i.e.*, *Chevron* deference, is appropriate "when it appears that Congress has delegated authority to [an] agency generally to make rules carrying the force of law, and that the agency interpretation [under evaluation] was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). Here, I.R.C. § 263A(i) directs the Secretary of the Treasury to "prescribe such regulations as may be necessary or appropriate to carry out the purposes of this section," and regulations under Section 263A were adopted after notice-and-comment rulemaking. *See* Notice of Proposed Rulemaking — Department of the Treasury, 56 Fed. Reg. 40815, 1991 WL 156987 (Aug. 16, 1991); Final Regulations — Department of the Treasury, 59 Fed. Reg. 67187, 1994 WL 16000428 (Dec. 29, 1994); *see also Mead*, 533 U.S. at 230 (noting "the overwhelming number of . . . cases applying *Chevron* deference have reviewed the fruits of notice-and-comment rulemaking or formal adjudication"). The rulemaking delegation in this instance thus is quite specific to the pertinent section and has been implemented.

1.  *"Property" as used in Section 263A.*

The government argues that the "property" whose costs are capitalized is not "the improvement" alone, but rather the *combination* of the improvement and the associated property. *See* Def.'s Cross-Mot. 24-26.  As a result, the government argues, the adjusted basis of the property, including the associated property, is a cost, under Subparagraph 263A(f)(4)(C), of creating *the combined unit* of property.  The government's argument, however, is not fully congruent with how associated property is actually treated by the IRS, the Treasury Regulations, and the Internal Revenue Code.

The government's conception of "the property" as both the improvement and the associated property would ostensibly require the associated property itself to be capitalized, or more accurately, recapitalized, as a cost of producing the improved property.  *See* I.R.C. § 263A(b)(1) ("[T]his section shall apply to . . . [r]eal or tangible personal property produced by the taxpayer."); I.R.C. § 263A(a)(1)(B) ("In the case of any property to which this section applies, any costs [described in Section 263A(a)(2)] . . . shall be capitalized," excepting inventory.); I.R.C. § 263A(a)(2) (explaining costs include the direct and indirect costs of "property").  However, when an improvement is undertaken, the associated property retains its existing basis and attendant depreciation schedule and is not recapitalized under Section 263A as part of the improvement:

> [When the existing boiler] was placed into service[,] . . . it acquired a basis and . . . was then depreciated over the appropriate life . . . . Subsequently when the . . . [new] burners were placed on the boilers, then the costs attributable to the burners now were put in a separate category, a separate item of property[,] and depreciated over the appropriate period, going forward from the date the improvements were made and totally independently of the cost of the boiler, which continued to be depreciated on its own terms as a separate unit of property.

Hr'g Tr. 7:4 to 8:3; *see also* Hr'g Tr. 19:7-13 ("[T]here is no way that the basis [of the boilers] can be a production expenditure [for the new burners] because the preexisting basis was capitalized long ago and it's not capitalized a second time when you compute the depreciable basis of the burners, which is a totally separate piece of property depreciated independently of the preexisting boilers.").  The government argues that even though Dominion's generating unit less the burners is considered separate property for depreciation purposes, it can still be treated conceptually as the same piece of property for the purpose of allocating interest under Section 263A.  *See* Def.'s Cross-Mot. at 31.

However, in defining the property produced, the government must look to the statute and then to the existing Treasury Regulations.  In addressing the "[p]roperty to which [the] [S]ection applies," I.R.C. § 263A(b) (heading), Paragraph § 263A(b)(1) states that the Section covers "[r]eal or tangible personal property produced by the taxpayer."  Paragraph 263A(g)(1) explains, "The term 'produce' includes construct, build, install, manufacture, develop, or improve."  These provisions do not specify how narrowly or broadly to delineate a unit of property.  The Treasury

Regulations fill this gap, specifying that an improvement can be a separate unit of property. *See* Treas. Reg. § 1.263A-11(e)(1)(i) ("If an improvement constitutes the production of designated property under § 1.263A-8(d)(3), accumulated production expenditures will consist of . . . [a]ll direct and indirect costs required to be capitalized with respect to the improvement."). Treas. Reg. § 1.263A-8(d)(3) is even more explicit in specifying that "[a]ny improvement to property described in [Treas. Reg.] § 1.263(a)-1(b) constitutes the production of property. Generally, any improvement to designated property constitutes the production of designated property [unless the de minimis exception applies]." Moreover, the associated-property rule itself treats the improvement and the associated property as though they were separate units of property. *See* Treas. Reg. § 1.263A-11(e)(1)(ii)(B) (noting that production expenditures include associated property "if the associated property directly benefits the property being improved, the associated property directly benefits from the improvement, or the improvement was incurred by reason of the associated property").

The government argues that Treas. Reg. § 1.263A-10(b), defining units of real property, mandates that components of real property which are "functionally interdependent" be treated as one unit of property. *See* Def.'s Cross-Mot. at 24. However, Dominion correctly notes that Section 1.263A-10(b) refers to components placed in service contemporaneously, not to an improvement added after a unit of property has previously been placed in service. *See* Pl.'s Reply at 9. This conceptual approach is illustrated adeptly by three hypotheticals posed by the government's counsel during the hearing of the cross-motions. In the first hypothetical, a power producer builds a generating unit from scratch. Hr'g Tr. 47:24-25. The generating unit costs $100 million, and, if financed by borrowed money, an interest cost is involved and that interest is capitalized upon the units being brought into service. Hr'g Tr. 48:2-7.[9] The second hypothetical concerns a generating unit that is purchased for $90 million, but which requires an improvement costing $10 million to be operational. Hr'g. Tr. 48:12-23. Again, money is borrowed or the purchaser has other debt, and interest is capitalized on the purchase amount plus the amount of the improvement, assuming that at least $100 million in debt exists for the period until the unit is brought into service. Hr'g Tr. 48:17-23. This hypothetical in essence reflects the thrust of Treas. Reg. § 1.263A-10(b), and is distinguishable from the instant case, which is represented by government's counsel's third hypothetical. In the third case, a taxpayer already has a generating unit in service, with a value of $90 million. Hr'g Tr. 48:24-25. To bring the unit up to

---

[9]Assuming that some of the taxpayer's own capital assets are used in the construction, such as taxpayer-owned bulldozers, trucks, and cranes, the depreciation attributable to that equipment during the construction period, plus attendant motor vehicle taxes, property taxes, and operating and maintenance costs, would be capitalized along with direct component costs for the generating unit. *See* Treas. Reg. § 1.263A-1(e)(3) (indirect costs subject to capitalization); *see also* Treas. Reg. § 1.263A-11(d)(1) (property used to produce designated property). Rental costs for equipment leased by the taxpayer for construction or installation must also be capitalized. *See* Treas. Reg. § 1.263A-1(e)(3)(ii)(K). However, costs and expenses for assets subject to I.R.C. § 179 need not be capitalized. *See* Treas. Reg. § 1.263A-1(e)(3)(iii)(C).

The principles reflected in these tax regulations generally accord with precepts applied prior to enactment of Section 263A. *See*, *e.g.*, *Commissioner v. Idaho Power Co.*, 418 U.S. 1 (1974) (depreciation of a taxpayer's equipment for the time used in the construction of its own capital asset is not deductible but rather a capital cost of the new asset).

regulatory standards, an improvement costing $10 million is made, and the generating unit is temporarily taken out of service to make the improvement. Hr'g Tr. 49:1-6. Assuming that the taxpayer has borrowings that equal or exceed the total value of the generating unit as improved, the government asserts that the basis of the generating unit that is temporarily taken out of service must be included in totaling the amount of value on which the capitalized interest calculation is made. Hr'g Tr. 49:7-11. In this hypothetical, however, the government acknowledges that the generating unit that is temporarily taken out of service keeps the basis and depreciation schedule that it had before the improvement was made, and that the addition acquires a separate new basis, with an attendant depreciation schedule, that reflects the cost of the improvement plus capitalized interest relating both to cost of the improvement and the basis of the associated property. Hr'g Tr. 72:10 to 73:17. As illustrated by the three hypotheticals, the government's arguments that Treas. Reg. § 1.263A-10(b) combines functionally interdependent components into one "property" has an appropriate application in the circumstances of the second hypothetical where the purchaser must make improvements before bringing the unit into service. However, the validity of the second hypothetical hardly "mandates" combining the components in the situation posed by the third hypothetical.

In sum, the word "property" as used in Subsections 263A(a) and (b), and thereafter throughout Section 263A, seemingly would be sufficiently broad that it could be defined to embrace both a pre-existing generating unit and an addition that was subsequently made to improve it. However, the court is troubled by the circumstance that the implementing Treasury Regulations address the definition of property in different and arguably inconsistent ways. Notably, Treas. Reg. § 1.263A-11(e) designates the improvement, *sans* the associated property, as a "unit of property" to which I.R.C. § 263A applies, but otherwise "borrows" the basis of the separate associated property for purposes of calculating interest imputed to the improvement. In short, the Treasury Regulation is Janus-like in looking both ways insofar as "property" is concerned. With these contradictions in mind, the court will examine Dominion's arguments respecting production expenditures and the associated-property rule.

2. *"Production expenditure" as defined in I.R.C. § 263A(f)(4)(C).*

Dominion contends that the adjusted basis of associated property, as defined in Treas. Reg. § 1.263A-11(e)(1)(ii)(B) — "any existing structure, common feature, or property that is not placed in service or must temporarily be withdrawn from service to complete the improvement" — cannot qualify as a "production expenditure" under the term's statutory definition, set forth in I.R.C. § 263A(f)(4)(C). Subparagraph 263A(f)(4)(C) defines "production expenditures" as "the costs (whether or not incurred during the production period) required to be capitalized under subsection (a) [of Section 263A] with respect to the property." This provision sets forth two limitations on production expenditures. Production expenditures must be (1) costs, which may or may not have been incurred while property was being produced, (2) that are required to be capitalized under Subsection 263A(a) with respect to the property.

The government's briefs present several candidates for what the term "costs" in Subparagraph 263A(f)(4)(C) could mean, as applied to associated property. At times the government claims the associated-property rule is meant to capture the economic cost of removing the property from service, and that the term "costs" in the definition of production

expenditures properly could refer to the economic costs of removing the associated property from service. *See* Def.'s Cross-Mot. at 22-23, 27. At other times, the government argues that associated property could be sold to pay down debt, and that its adjusted basis effectively represents the cost of keeping it, albeit in a temporarily inactive mode. *See id*. at 29, 34.

The government's discussion of "economic costs" in part suggests that the "economic costs" of an improvement are roughly represented by capitalizing interest on the adjusted basis of the associated property, *see* Def.'s Cross-Mot. at 23, and that the "economic costs" of removing associated property from service on a temporary basis are among the costs of producing property, *i.e.*, the improvement, referred to in the definition of production expenditures. *Id*. at 35; *see also* Hr'g Tr. 62:6-20. These positions also are not fully congruent.

The first position, suggesting economic costs are roughly captured by capitalizing interest according to the associated-property rule, does not directly speak to the *Chevron* Step One analysis. *See* Def.'s Cross-Mot. at 23 ("Treasury reasonably determined that the most appropriate *measure of the avoided cost* that must be capitalized was to use the adjusted basis of the unit of property being improved, during the production period, at a given interest rate. *This puts a price tag on the taxpayer's decision to remove the unit of property from service*, and determines that that cost should be capitalized, not currently deducted.") (emphasis added). This position assumes that the economic cost of removing associated property from service, perhaps causing a loss of revenue and income, is somehow related or similar to the interest accrued temporarily on an amount of debt equal to the adjusted basis of the associated property. The government provides no explanation for why the economic cost of removal would be represented by the amount of interest accruing on that segment of a taxpayer's debt.

More relevant to the *Chevron* Step One analysis, however, is the second potential meaning of "economic costs," which posits that the "economic cost" of removing associated property from service is among the "costs" in the definition of "production expenditures" set out in Subparagraph 263A(f)(4)(C). *See* Def.'s Cross-Mot. at 35 (characterizing "production expenditures as equivalent to economic costs"). The government argues that because production expenditures include all "costs (whether or not incurred during the production period) required to be capitalized under subsection (a) [of Section 263A] with respect to the property," it is appropriate to treat the adjusted basis of the associated property as a "production expenditure" for interest-capitalization purposes, but only that purpose, because there are certain economic costs associated with removing the associated property from service. *See* Def.'s Cross-Mot at 22 ("[W]hen a taxpayer removes a unit of property from service (say, a power generating plant), in order to improve it, that unit of property is no longer generating revenue to pay down the taxpayer's debt. The taxpayer willingly incurs or continues debt as part of the financial investment in improving the property.").[10]

Dominion disputes the assertion that the economic cost of removing the property from service could justify treating the adjusted basis of the associated property as a production

---

[10]To reiterate, the basis would not itself be an "indirect cost[]" capitalized for the improvement under Subparagraph 263A(a)(2)(B). It would only be involved in capitalizing interest under Subsection 263A(f).

expenditure under Subparagraph 263A(f)(4)(C).  Pl.'s Reply at 6.  Subsection 263A(f) focuses on the "property" and the costs ("production expenditures") of producing that property, and interest is capitalized on an amount of debt equal to that cost.  No one has advocated or estimated "economic cost" to be equal to the adjusted basis of the associated property.  For example, if a taxpayer lost $1,000 of revenue, and perhaps some associated income, because it withdrew from service a generating unit whose adjusted basis was $100,000, the *economic cost* of that decision would be $1,000, not $100,000, and the production expenditures would properly include the $1,000 figure, not the $100,000 figure, as the "costs."  Alternatively, the loss of revenue, and perhaps associated income, could be greater than the basis.  The government's variant on an "economic cost" theory simply is not embedded in the statute.

The other argument by the government — that the adjusted basis of the associated property is appropriately viewed as a "cost" because the associated property theoretically could have been sold at that value, *see* Def.'s Cross-Mot. at 29, 32, 34 — rests on a strained reading of Subparagraph 263A(f)(4)(C).  As noted earlier, the Treasury Regulation treats costs and the adjusted basis of associated property as though they were separate items.  *See* Treas. Reg. § 1.263A-11(e) ("[A]ccumulated production expenditures with respect to the improvement consist of — (i) All direct and indirect costs required to be capitalized with respect to the improvement, (ii) In the case of an improvement to a unit of real property . . . the adjusted basis of any [associated property].").  Subparagraph 263A(f)(4)(C) includes a parenthetical after the word "costs" in the definition of production expenditures, stating that such costs appertain "whether or not incurred during the production period."  Dominion argues that this parenthetical merely was inserted to acknowledge that some costs of property production are preparatory, such as meeting with government officials, obtaining building permits, or drafting architectural plans, and that the parenthetical should not be read as allowing the original cost of acquiring associated property, reduced by depreciation already taken, to be included as a cost.  Pl.'s Mot. at 16-18 (citing *Von-Lusk v. Commissioner*, 104 T.C. 207 (1995)).

Drawing these different threads together, associated property is not "required to be capitalized" under Subsection 263A(a) "with respect to" the improvement, and consequently, the adjusted basis of associated property does not fit easily within the definition of "production expenditure" in Subparagraph 263A(f)(4)(C).  This presents a problem for the associated-property rule under *Chevron* Step One when Subparagraph 263A(f)(4)(C) and Clause 263A(f)(2)(A)(ii) are read together.  As previously discussed, Section 263A(f)(2)(A)(ii) "only" requires interest to be capitalized "to the extent that the taxpayer's interest costs could have been reduced if *production expenditures* . . . had not been incurred." (emphasis added).

Nonetheless, the discrepancy arises not because the statutory term "property" could not be interpreted by Treasury to bundle the improvement with the associated property, but rather because the Treasury Regulations define and treat the improvement as "property" separate and apart from the associated property.  This inconsistency is an issue that properly should be addressed under *Chevron* Step Two, not *Chevron* Step One.

3. *The indirect-attribution portion of the interest-capitalization provisions of Subsection 263A(f).*

Dominion argues that including the adjusted basis of the associated property, here the boilers and associated generating equipment, in the amount of debt on which interest must be capitalized, violates Clause 263A(f)(2)(A)(ii) because the taxpayer's indebtedness could not actually have been reduced by the amount of the basis of the associated property if the improvement project had not occurred. Dominion acquired the generating units for its power plants before it decided whether or not to install improved burners. Dominion contends that if it had decided not to install the burners, it still would have owned the generating units, and the value of the basis of the generating units would not have been available to reduce indebtedness if the improvement did not occur. In other words, "[t]he adjusted basis of . . . associated property . . . does not represent funds the taxpayer expended as a result of the taxpayer's decision to produce the improvement, but rather funds the taxpayer expended as a result of the prior decision to the acquire the [associated] property, a decision that was entirely separate and independent from the later decision to produce [an] improvement, and, for the most part, [occurred] long before the decision to produce the improvement." Pl.'s Mot. at 7-8.

The government argues that the adjusted basis of the associated property could have been made available to pay down debt if Dominion had sold the generating units instead of improving them. Def.'s Cross-Mot. at 29. This is, of course, a fiction, given that the generating units in question are large, immobile parts of large power plants which could not realistically be sold individually. The government also argues that eliminating the associated-property rule would reduce tax parity, causing a taxpayer who improved the burners on a newly-acquired generator before first putting it into service to be treated differently than a taxpayer who removed a functioning generator from service to improve its burners. *Id.* at 30-31. This policy argument has no bearing on Dominion's claim that the associated-property rule violates *Chevron* Step One. Moreover, it ignores the fact that the newly obtained generating unit would not have acquired a basis in the taxpayer's hands until it was placed into service by the taxpayer. That event would not occur in the hypothetical situation until the improvement had been made. Therefore, a unitary basis for the generating unit and the improvement becomes fully appropriate. *See supra*, at 14.

Nonetheless, the court cannot say that the associated-property rule contradicts the text of Paragraph 263A(f)(2). Clause 263A(f)(2)(A)(ii) has a tautological aspect — presuming that "if production expenditures . . . had not been incurred," the funds that would have been spent on those "production expenditures" could have been used to reduce taxpayer's indebtedness. Thus this provision, read alone, does not present a problem for the associated-property rule under *Chevron*.

B. *Agency Deference —* Chevron *Step Two*

The second step of the *Chevron* test, "whether the agency's answer [to the question at issue] is based on a permissible construction of the statute," 467 U.S. at 843, in this instance essentially reduces to whether the IRS could deem the adjusted basis of associated property to be a production expenditure for capitalizing interest regarding an improvement under I.R.C.

§ 263A.  The associated-property rule will only be invalidated if it is "arbitrary or capricious in substance, or manifestly contrary to the statute." *Mayo Found.*, __ U.S. at __, 131 S.Ct. at 711 (quoting *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 242 (2004)) (internal quotations omitted); *see also GHS Health Maint. Org. v. United States*, 536 F.3d 1293, 1297 (Fed. Cir. 2008) (Under *Chevron* Step Two, a regulation "is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." (quoting *Mead*, 533 U.S. at 227)).

The structure of Section 263A insofar as capitalization of interest is concerned was developed by Congress from experience with a predecessor statute, I.R.C. § 189 (1982), and from consideration of Financial Accounting Standards Board Statement Number 34 ("FAS 34") (1979).[11]  The Senate Report concerning proposed Section 263A described the premises upon which the Senate Finance Committee was acting in framing Section 263A:

> The legislative history of amendments to [S]ection 189 indicates Congress' intention that the Treasury Department issue regulations allocating interest to expenditures for real property during construction consistent with the method prescribed by [FAS 34]. Under FAS 34, *the amount of interest to be capitalized is the portion of the total interest expense incurred during the construction period that could have been avoided if funds had not been expended for construction*. Interest expense that could have been avoided includes interest costs incurred by reason of additional borrowings to finance construction, and interest costs incurred by reason of borrowings that could have been repaid with funds expended for construction.

S. Rep. No. 99-313, at 140 (1986) (emphasis added) (citing H.R. Rep. No. 97-760, at 485 (1982) (Conf. Rep.)); *see also* H.R. Rep. No. 99-426, at 625 (1986) (same).  The Senate Report went on to conclude:

> The committee intends that the determination [under Section 263A] of whether debt is incurred or continued to finance the production of property will be made under rules similar to those applicable under [S]ection 189 . . . .  Under these rules, any interest expense that would have been avoided if production or construction expenditures had been used to repay indebtedness of the taxpayer is treated as construction period interest subject to capitalization. Accordingly, under the bill, debt that can be specifically traced to production or construction expenditures first must be allocated to production or construction.  If production or construction expenditures exceed the amount of this debt, interest on other debt

---

[11]The text of FAS 34 is attached to the government's cross-motion for summary judgment.  *See* Def.'s Cross-Mot. App. B, Ex. 3, at 11-34.

> of the taxpayer must be treated, to the extent of this excess, as production or construction period interest.

S. Rep. No. 99-313, at 144 (1986); *see also* H.R. Rep. No. 99-426, at 627-28 (1986) (same).

The House Conference Report elaborated on these premises by setting out a priority-ordering template, *i.e.*, when there were differences between the avoided-cost method, as expressed in Section 263A, and the method explained in FAS 34, the statute would control.

> The conferees wish to clarify that the avoided cost method of determining the amount of interest allocable to production is intended to apply irrespective of whether application of such method (or a similar method) is required, authorized, or considered appropriate under financial or regulatory accounting principles applicable to the taxpayer. Thus, for example, a regulated utility company must apply the avoided cost method of determining capitalized interest even though a different method is authorized or required by Financial Accounting Standards Board Statement 34 or the regulatory authority having jurisdiction over the utility. No inference is intended that the avoided cost method is not required in such circumstances under [S]ection 189 of present law.

H.R. Rep. No. 99-841, at 240 (1986) (Conf. Rep.), 1986 WL 31988.

Notably, respecting the imputed interest-capitalization issue presented in this case, former Section 189 required the capitalization of "interest paid or accrued on indebtedness incurred or continued to acquire, construct, or carry real property, . . . to the extent such interest . . . [was] attributable to the construction period for such property and would be allowable as a deduction under this chapter for the taxable year in which paid or accrued (determined without regard for this section)." I.R.C. § 189(e). Consequently, Section 189 did not require the capitalization of interest on debt which was not directly related to construction. Additionally, given the relatively limited scope of Section 189 — interest need only be capitalized "on indebtedness incurred or continued to acquire, construct, or carry real property" — it is plain that the associated-property rule would not have been a permissible regulation under Section 189.

The Treasury proposed regulations for Subsection 263A(f) in 1991. In the preamble to the proposal, the Treasury espoused fidelity to the interest-capitalization principles expressed in FAS 34 and former Section 189. *See* Notice of Proposed Rulemaking – Department of the Treasury, 56 Fed. Reg. 40815, 40816, 1991 WL 156987 (proposed Aug. 16, 1991) ("The legislative history [of Subsection 263A(f)] indicates that the avoided cost method is based on rules similar to those applicable under former [S]ection 189. The legislative history underlying former [S]ection 189 indicates that the rules contained in [FAS] 34, as amended, apply to the capitalization of interest under [S]ection 189." (citing S. Rep. No. 99-313, at 144 (1986); H.R. Rep. No. 97-760, at 484-85 (1982) (Conf. Rep.)).

When in 1994, the Treasury issued final regulations for Section 263A, it retreated from a full embrace of the principles of FAS 34, despite its role in the legislative history of Section 263A and former Section 189.  In the preamble to the final regulations, the Treasury reiterated, "Congress indicated that it intended interest to be capitalized under the avoided cost method, using rules similar to those applicable under former [S]ection 189. . . .  Former [S]ection 189 applied rules similar to those contained in [FAS 34]."  59 Fed. Reg. 67187, 67190, 1994 WL 16000428 (Dec. 29, 1994) (citations omitted).  Nonetheless, although the regulations claimed to "adopt an approach similar" to the rules in FAS 34, the Treasury was "not persuaded that the regulations should be changed [based on commentators' suggestions] to permit the use of the financial accounting rules of []FAS 34 instead of the avoided cost method in the proposed regulations."  *Id.*

Turning to the specific provision at issue, the regulatory history of the associated-property rule is sparse.  Before regulations were proposed, the IRS issued guidance on how to comply with Section 263A.  *See* Notice 88-99, 1988-36 I.R.B. 29, 1988-2 C.B. 422, 1988 WL 561191 (Aug. 16, 1988).  The IRS' notice did not introduce the concept of associated property, instead instructing taxpayers "to include in production expenditures the adjusted bases of equipment and facilities only to the extent that such equipment and facilities are used in a reasonably proximate manner to produce the qualified property."  *See* Notice 88-99, Part IV.C.  Among the items that the notice stated should be included as production expenditures were "machinery directly used to produce qualified property or components thereof; assembly-line structures; structures used in the production process; buildings, leaseholds, and improvements thereon; and other similar types of property."  *Id.*  Excluded were items "not used in a reasonably proximate manner to produce the qualified property," including "administrative operations; personnel operations (i.e., recruiting, hiring, and maintaining personnel records of employees); purchasing operations; accounting and data services operations; data processing; security services; and legal departments."  *Id.*

A version of the associated-property rule first appeared in the Treasury's proposed regulations in 1991.  That version provided:

> If an improvement constitutes the production of designated property . . . , accumulated production expenditures with respect to the improvement consist of all direct and indirect costs required to be capitalized with respect to the improvement, plus an allocable portion of the cost of associated land, *plus the adjusted bases of any existing structures or common features that directly benefit*, or are incurred by reason of, *the improvement if* either they are not placed in service or *they must be taken out of service to complete the improvement*, regardless of whether the taxpayer intends to sell or use the improvement.  For example, in the case of an improvement to real property, accumulated production expenditures include the direct and indirect costs incurred for the improvement, a prorata share of the cost of any associated land (including a prorata share

of land subject to setback restrictions), plus the adjusted basis of any existing structures that are not placed in service or that must be taken out of service to complete the improvement.  In the case of an improvement to a unit of tangible personal property, accumulated production expenditures include the adjusted basis of the asset being improved if that asset either is not placed in service or must be taken out of service to complete the improvement, regardless of whether the taxpayer intends to sell or use the improvement.

Notice of Proposed Rulemaking – Department of the Treasury, 56 Fed. Reg. 40815, 40835 (proposed 26 C.F.R. § 1.263A(f)-4(e)(1)), 1991 WL 156987 (Aug, 16, 1991) (emphasis added).  Although the preamble explains how to apply the associated-property rule, it does not give a reason for its inclusion.  *See id*. at 40821 ("In addition, the costs of existing property and common features that benefit or are incurred by reason of the improvement are included in accumulated production expenditures if they either are not already placed in service or must be taken out of service in order to complete the improvement, regardless of whether the taxpayer intends to sell or use the improved property.").

The final regulations brought some changes to the associated-property rule and an expansion of the de minimis rule.  They stated:

(1) General rule. If an improvement constitutes the production of designated property under [Treas. Reg. § ] 1.263A-8(d)(3), accumulated production expenditures with respect to the improvement consist of—
(i) All direct and indirect costs required to be capitalized with respect to the improvement,
(ii) *In the case of an improvement to a unit of real property*
(A) An allocable portion of the cost of land, and
(B) For any measurement period, *the adjusted basis of any existing* structure, common feature, or other *property that* is not placed in service or *must be temporarily withdrawn from service to complete the improvement (associated property) during any part of the measurement period* if the associated property directly benefits the property being improved, the associated property directly benefits from the improvement, or the improvement was incurred by reason of the associated property.  See, however, the de minimis rule under paragraph (e)(2) of this section that applies in the case of associated property.
(iii) *In the case of an improvement to a unit of tangible personal property, the adjusted basis of the asset being*

> *improved if the asset* either is not placed in service or *must be temporarily withdrawn from service to complete the improvement*.

> (2) De minimis rule.  For purposes of paragraph (e)(1)(ii) of this section, the total costs of all associated property for an improvement unit (associated property costs are excluded from the accumulated production expenditures for the improvement unit during its production period if, on the date the production period of the unit begins, the taxpayer reasonably expects that at no time during the production period of the unit will the accumulated production expenditures for the unit, determined without regard to the associated property costs, exceed 5 percent of the associated property costs.

Final Regulations – Department of the Treasury, 59 Fed. Reg. 67187, 67211 (final 26 C.F.R. § 1.263A-11(e)), 1944 WL 16000428 (Dec. 29, 1994) (emphasis added).

The preamble described how to apply the associated-property portion of this rule and addressed some of the comments submitted during the notice and comment period:

> Commentators indicated that sometimes property must be temporarily disconnected or otherwise taken out of service for health, safety, or regulatory reasons in order to make certain improvements (e.g., a power generating facility must be taken out of service in order to make capital improvements).  *Commentators suggested that the regulations provide that property is taken out of service only if the property is taken out of service for depreciation purposes.  The final regulations do not adopt the suggestion* concerning when property should be considered taken out of service.  However, the final regulations provide a de minimis rule for property taken out of service.

59 Fed. Reg. at 67192-93.  The preamble does not explain why the commentators' suggestion was rejected.  Also, the commentators had implicitly focused on the separate basis of the associated property by keying their suggestion for revision of the proposal to the depreciation of that property.  However, the commentators did not address the logical antecedent to their suggestion — *i.e.*, that with the associated-property addendum to the rule, property would be defined in arguably inconsistent ways — first with relation to the improvement and second with respect to the associated property.

Section 263A allowed the Treasury significant discretion to define the breadth of "property" produced by the taxpayer.  *See* I.R.C. § 263A(b)(1) ("[T]his section shall apply to . . . [r]eal or tangible personal property produced by the taxpayer."); I.R.C. § 263A(g)(1) ("The term 'produce' includes construct, build, install, manufacture, develop or improve.").  The Treasury did decide to adopt one moderately expansive approach to property for purposes of Section 263A

when it bundled components with "functionally interdependent" property placed in service at the same time.  *See* Treas. Reg. § 1.263A-10(b).  Nonetheless, that circumstance was not problematic because only one capitalization event and accompanying depreciation schedule were involved.  The associated-property rule embodied in Treas. Reg. § 263A-11(e)(1) rests on a split foundation because the improvement acquires a basis separate from that of the associated property.

Consider the requirements of Paragraph 263A(f)(2) and Subparagraph 263A(f)(4)(C). Clause 263A(f)(2)(A)(ii) requires that "interest on any . . . indebtedness [not directly attributable to production expenditures] shall be assigned to property to the extent that the taxpayer's interest costs could have been reduced if production expenditures . . . had not been incurred." Subparagraph 263A(f)(4)(C) defines those production expenditures as "the costs . . . required to be capitalized under [Subsection 263A(a)] with respect to the property."  If "the property" is the improvement alone, then, as discussed *supra*, the adjusted basis of the improvement's associated property is not and cannot be a "cost[] . . . required to be capitalized under [Subsection 263A(a)]" with respect to the improvement.[12]  The associated property is not re-capitalized due to the improvement, and no one has ever suggested that it should be.

To support the exercise of the Treasury's discretion to adopt Treas. Reg. § 1.263A-11(e)(1), the government relies heavily on avoided-cost principles.  Def.'s Cross-Mot. at 43 ("[T]he associated-property rule is meant to capture the avoided interest costs associated with taking the unit of property out of service.");  Hr'g Tr. 60:11 to 67:5.  This reliance on avoided-cost principles is consistent with the Senate Report of the bill that produced Section 263A, *see supra*, at 18 (quoting S. Rep. No. 99-313, at 144 (1986)), and with the House Conference Report which gave priority to "appl[ication of] the avoided cost method of determining capitalized interest even though a different method is authorized or required by [FAS] 34 or the regulatory authority having jurisdiction."  H.R. Rep. No. 99-841, at 240 (1986) (Conf. Rep.).  Moreover, taking a unit out of service temporarily to make an improvement has an obvious economic cost. Nonetheless, Dominion contends that the court should look to "what the statute says."  Hr'g Tr. 80:24-25.  It criticizes the government for relying on "notions of economics" that have "nothing to do with this statute."  Hr'g Tr. 81:1, 3

It is stretching the statute quite far to say that the associated-property rule "is a 'reasonable interpretation' of the enacted text [of Section 263A]," *Mayo Found.*, __ U.S. at __,

---

[12]To reiterate, Treas. Reg. § 1.263A-11(e) treats the adjusted basis of associated property as separate from the costs of producing the improvement.  *See* Treas. Reg. § 1.263A-11(e) ("[A]ccumulated production expenditures with respect to the improvement consist of . . . [a]ll direct and indirect costs required to be capitalized with respect to the improvement, [and i]n the case of an improvement to a unit of real property[,] . . .[a]n allocable portion of the cost of land, and . . . the adjusted basis of any [associated property].").  Because Treas. Reg. § 1.263A-11(e) excludes the adjusted basis of associated property from the "direct and indirect costs required to be capitalized with respect to the improvement," and because the adjusted basis of associated property is not capitalized under Subsection 263A(a) due to the improvement, the adjusted basis of associated property cannot be a production expenditure, as defined in Subparagraph 263A(f)(4)(C).

131 S.Ct. at 714 (quoting *Chevron*, 467 U.S. at 844), because of the internal inconsistency in defining "property" for purposes of Treas. Reg. § 263A-11(e)(1).  The government's two separate rationales for including the basis of associated property in the calculation of imputed interest to be calculated for an improvement are not very satisfying.  Having the interest calculation on the associated-property basis serve as a surrogate for the lost revenue income attributable to taking the associated property out of service is at best a very rough approximation.  *See supra*, at 15-16.  Similarly, asserting that the associated property could be sold at a value equal to its basis, thus making funds available to pay down debt, is both a rough approximation and removed from reality because the associated property is being improved to continue in service.  *See supra*, at 16.  One might also question the wisdom of including the basis of associated property in calculating interest to be capitalized for an improvement because that inclusion constitutes a tax disincentive to making improvements to productive manufacturing capacity.  Nonetheless, it is not this court's province to be making such policy choices.  In this very close case, the court cannot say that Treasury overstepped the latitude granted by the statute to adopt regulations prescribing the calculation of interest to be capitalized in connection with an improvement to existing property used by the taxpayer to produce income.  Treas. Reg. § 263A-11(e)(1) thus survives Dominion's strong challenge made under *Chevron* Step Two.

## II.  PROMULGATION OF THE TREASURY RULE

Dominion also argues that the associated-property rule is invalid because it was adopted in contravention of the Administrative Procedure Act, which requires the court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A).  *See* Pl.'s Mot. at 33-39; Pl.'s Reply at 27-29.  Relying heavily on *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983), Dominion contends that Treasury "failed to provide any explanation of the reasoning that led it to adopt the associated[-]property rule."  Pl.'s Reply at 27.

*State Farm* cautions that "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."  463 U.S. at 43.  "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made.'"  *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).  In short, an agency "must cogently explain why it has exercised its discretion in a given manner."  463 U.S. at 43.

In this context, a reviewing court "should not attempt itself to make up for [the agency's] deficiencies . . . [or] 'supply a reasoned basis for the agency's action that the agency itself has not given.'"  *State Farm*, 463 U.S. at 43 (quoting *Securities & Exch. Comm'n v. Chenery*, 332 U.S. 194, 196 (1947)).  Neither should the court "accept . . . counsel's *post hoc* rationalizations for agency action. . . . [A]n agency's action must be upheld, . . . on the basis articulated by the agency itself."  463 U.S. at 50 (citing *Burlington Truck Lines*, 371 U.S. at 168; *Chenery*, 332 U.S. at 196); *see also GHS Health Maint. Org.*, 536 F.3d at 1302 ("It is not our place to compensate for any deficiencies that may exist with the agency's proffered explanations.  We are only to evaluate the agency's stated rationales, not supply our own."); *In re Lee*, 277 F.3d 1338,

1344 (Fed. Cir. 2002) ("Deferential judicial review under the Administrative Procedure Act does not relieve the agency of its obligation to develop an evidentiary basis for its findings.").

"[A] decision of less than ideal clarity" can be upheld "if the agency's path may reasonably be discerned." *State Farm*, 463 U.S. at 43 (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys.*, 419 U.S. 281, 286 (1974)). As a general matter, the associated-property rule was adopted to implement avoided-cost principles. *See* Notice of Proposed Rulemaking, 56 Fed. Rep. at 40816 ("Section 263A(f)(2) provides that the avoided cost method is to be used for determining the amount of interest required to be capitalized."). Sections of Treasury's proposed regulation explained the avoided-cost method without reference to improvements to existing property. *See id.* at 40826 (proposed 26 C.F.R. § 1.263A(f)-2). The topic of "subsequent improvements to real property," *id.* at 40821 (heading, capitals omitted), was addressed separately. There, Treasury noted that "special rules" were being provided. *Id.* The Treasury explained that "if a taxpayer purchases an existing building for renovation, the basis of the building is included in accumulated production expenditures if the building is not placed in service as a depreciable asset during the renovation (or must be taken out of service during the renovation)." *Id.* The circumstance described in the preamble to the proposal appears to contain elements of both the second and third hypotheticals described by the government's counsel during the hearing of the cross-motions, *see supra*, at 13-14, and thus is not particularly illuminating regarding application of the property terms in Section 263A. The relevant proposed rule similarly combined these elements. *See* 56 Fed. Reg. at 40835 (proposed 26 C.F.R. § 1.263A(f)-4(e)(1)) ("[I]n the case of an improvement to a real property, accumulated production expenditures include . . . the adjusted basis of any existing structures that are not placed in service or that must be taken out of service to complete the improvement.").

Treasury's approach was clarified somewhat in the final regulations, which split the treatment of additions into two separate provisions. Treas. Reg. § 1.263A-10(b) addressed components of real property which are "functionally interdependent" and are treated as one unit of property where the components are placed in service contemporaneously. *See supra*, at 14. Treas. Reg. § 1.263A-11(e) deals with improvements to a property that had been previously placed in service. The preamble to the final rule commented on the "functionally interdependent" provision by stating that "Congress repealed former [S]ection 189 (relating to the capitalization of interest and taxes during the construction period of real property) and enacted the more expansive, uniform capitalization rules under [S]ection 263A(f)." 59 Fed. Reg. at 67191. In that same context, the Treasury commented that "*Section 263A(f) defines property uniformly, and therefore[] property in all circumstances includes the functionally interdependent components of property.*" *Id.* (emphasis added). This latter statement was correct only for Treas. Reg. § 1.263A-10.

Treas. Reg. § 1.263A-11(e) was addressed in the preamble to the final rule under the heading "Improvements to Real Property[:] Property Taken Out of Service." 59 Fed. Reg. at 67192. There, Treasury addressed commentators' suggestions that existing property, on which improvements were being made, be considered as "taken out of service only if the property is taken out of service for depreciation purposes." *Id.* at 67193. As described earlier, Treasury's response was to decline to adopt the suggestion but to expand the de minimis exemption. *Id.*; *see also supra*, at 21. Nothing was said about defining "property" in two different ways in Treas.

Reg. § 1.263A-11(e)(1).

Here too, it is a stretch to conclude that Treasury "cogently explain[ed] why it has exercised its discretion in a given manner," *State Farm*, 463 U.S. at 48, respecting capitalization of interest under the associated-property rule of Treas. Reg. § 1.263A-11(e)(1).  Treasury did, however, at least alert interested potential commentators that treatment of the basis of the property being improved was at issue insofar as capitalization was concerned — and commentators responded.  The lack of analytical precision in the comments and in Treasury's response might be problematic insofar as a cogent explanation is concerned, and even confusing when taken with Treasury's statement regarding Treas. Reg. § 1.263A-10 that property was defined uniformly by Subsection 263A(f), but that lack of exactitude and the ensuing confusion do not signify that Treasury acted to establish the final rule in an arbitrary and capricious manner.  The "path" that Treasury was taking in the rulemaking proceedings can be "discerned," albeit somewhat murkily.  *State Farm*, 463 U.S. at 43.  Dominion's challenge to the promulgation of the final rule based upon the APA is therefore unavailing.

## III. APPLICATION OF THE DE MINIMIS RULE

Dominion argues in the alternative that the de minimis rule should be invoked retroactively, as applied to the Mount Storm project.  Prior to the 2007 Settlement, Dominion had treated 100 percent of the Mount Storm improvement costs as a capital investment.  In the 2007 Settlement, Dominion and the IRS agreed that, instead, Dominion would capitalize interest on its debt equal to 50 percent of the costs of the improvements rather than 100 percent.  Am. to Pl.'s Compl. ¶ 23.  Half of the estimated costs of improvements to the Mount Storm project, not including the adjusted basis of the generating units, would have been $5,513,000.00, which is less than five percent of the $131,820,854.00 basis in the associated property related to the project.  Therefore, Dominion argues, the Mount Storm project should be subject to the de minimis rule, Treas. Reg. 1.263-11(e)(2).  *Id.* ¶ 25.  The rule excludes associated property costs "from the accumulated production expenditures for the improvement unit during its production period if, on the date the production period of the unit begins, the taxpayer reasonably expects that at no time during the production period of the unit will the accumulated production expenditures for the unit, determined without regard to the associated property costs, exceed 5 percent of the associated property costs."  Treas. Reg. § 1.263A-11(e)(2).

The government argues that the de minimis rule cannot be applied retroactively.  *See* Def.'s Cross-Mot. at 42.  Indeed, the rule states that the de minimis rule only applies "if, *on the date the production period of the unit begins*, the taxpayer reasonably expects that" the accumulated production expenditures for the unit will not exceed five percent of the associated property costs during the production period.  Treas. Reg. § 1.263A-11(e)(2) (emphasis added).  There is no allowance, within the rule, for retroactively excluding "costs of all associated property" from the "accumulated production expenditures" if it *later* turns out, as here, that the production expenditures amount to less than five percent of the associated property costs.  When production began, Dominion estimated that its production expenditures for the Mount Storm project would exceed five percent of the associated property cost.  *See* Stip. ¶ 52 (stating that Dominion's production-expenditure projection was $11,026,800.00); Pl.'s Mot. at 40.  Dominion's claim for the interest allocated to associated property costs for the Mount Storm

project is therefore denied.

Dominion is also barred from recovering on its de-minimis-rule claim because of the "substantial variance" rule. That rule, which arises from I.R.C. § 7422(a) and Treas. Reg. § 301.6402-2(b)(1), "bars a taxpayer from presenting claims in a tax refund suit that 'substantially vary' the legal theories and factual bases set forth in the tax refund claim presented to the IRS." *Lockheed Martin*, 210 F.3d at 1371 (citing *Cook*, 599 F.2d at 406). More specifically, a "legal theory not expressly or impliedly contained in the application for refund cannot be considered by a court in which a suit for refund is subsequently initiated." *Lockheed Martin*, 210 F.3d at 1371 (quoting *Burlington N*, 684 F.2d at 868). Dominion does not appear to have raised its legal theory for refund under the de minimis rule in its original tax refund filings. *See* Stip. Ex. 2 at 4 (Form 1120X). Dominion's refund claim explained,

> [Dominion claims a d]eduction for capitalized interest on associated property for certain projects . . . . Detailed information has been provided to IRS audit agents. We believe that the regulations require that capitalized interest be computed on an avoided cost method.

> On August 1, 2002, Dominion Resources . . . received an unfavorable Technical Advice Memorandum from the [IRS] indicating that when computing capitalized interest on self-constructed assets [according to I.R.C. § 263A], property temporarily withdrawn from service during construction must be taken into account. . . . [Dominion] believes that the Technical Advice Memorandum ruling is in error since it does not take into account "avoided costs" principles as required by Treas. Reg. [§] 1.263A-9 and I.R.C.[§] 263A[](f)(2).

*Id*. Nowhere in its claim did Dominion argue that it might also be due a refund under the de minimis rule.

Dominion bears the burden of establishing that it sufficiently apprised the IRS of the grounds on which it bases its claims for refund before this court. *See Ottawa Silica*, 699 F.2d at 1138-39. It has not done so respecting application of the de minimis rule. Consequently, for this separate additional reason, Dominion cannot invoke the de minimis rule as a basis for recovery.

## IV. COUNTERCLAIM

The government's counterclaim asserts that "the IRS did not previously capitalize enough interest on associated property for [Dominion Resources] for the 1996 tax year" and asks for "the additional tax and interest resulting from the correct calculation of capitalized interest on associated property." First Am. Answer and Countercl. ¶¶ 27, 29. Dominion argues that the counterclaim is improper and that the amount of interest capitalized cannot be revisited because none of the requirements for reopening the 2007 Settlement have been met. Pl.'s Reply at 30.

Prior to the settlement agreement, Dominion argued that replacing the burners in its generating units should be deductable as a repair, and the IRS argued that the burner replacements should be capitalized as an improvement.  In the 2007 Settlement, the parties compromised, agreeing that half of the cost of replacing the burners at Possum Point and Mount Storm could be deducted, and half would be capitalized.  The government now argues that it "[m]istakenly" capitalized half, instead of all, of the interest allocable to the associated property in the settlement agreement.  Def.'s Cross-Mot. at 43.  The government notes that "the parties agreed that with respect to the value of *the cost of replacing the existing burners* . . . , half would be considered an immediately deductible expense, and half a capital expenditure. . . .  Because interest on the associated[-]property cost depends on the adjusted basis of the associated property . . . and not the value of the burner project, the amount of properly capitalizable interest remains [100 percent of the interest]."  *Id.* (citing Stip. ¶ 36) (emphasis added).  The government's argument in support of the counterclaim is diametrically opposed to its defense of the associated-property rule; as the government would have it, the associated-property rule reflects a "cost" of the improvement project for purposes of Section 263A(f)(4)(C) and Treas. Reg. § 263A-11(e)(1)(ii)(B), but not for purposes of the 2007 Settlement.

The 2007 Settlement states that the Commissioner of Internal Revenue can only reopen the case if there were "fraud, malfeasance, concealment, or misrepresentation of a material fact[,] an important mistake in mathematical calculation[,] a deficiency or overassessment resulting from adjustments made under Subchapters C and D of Chapter 63 . . . [, or] an excessive tentative allowance of a carryback provided by law."  Stip. Ex. 1 at 2.

The government argues that it is not seeking to "reopen" the 2007 Settlement because "the amount of capitalized interest required under the associated property regulation was *never settled*."  Def.'s Reply at 17.  However, the government's claim is unconvincing.  Dominion and the IRS arrived at an agreement concerning Dominion's tax liability for 1996.  *See* Stip. Ex. 1 at 1.  Dominion reserved the "right to timely file claims *for refund or credit* . . . for . . . [t]he amount of interest properly capitalized . . . with respect to 'associated property,' as defined in Treas[.] Reg[.] § 1.263A-11(e)."  *Id.* (emphasis added).  The IRS, however, made no reservations allowing it to seek *additional* taxes on the amount of interest capitalized with respect to associated property.

Accordingly, the only way for the government to require Dominion to capitalize more interest on its 1996 improvement projects would be if one of the requirements for reopening the settlement agreement were met.  None are.  The percentage and amount of interest to deduct and capitalize were precisely what the parties negotiated.  Dominion notes, correctly, that the government provides no evidence that supports reopening the 2007 Settlement.  Pl.'s Reply. at 30.  As a result, the court cannot revisit the terms of the parties' settlement agreement.

In sum, the 2007 Settlement blocks the government's counterclaim, and summary judgment can be and is granted in Dominion's favor in that regard.  *See* RCFC 56(e)(2).

**CONCLUSION**

For the reasons stated, Dominion's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  The government's cross-motion for summary judgment is similarly GRANTED IN PART and DENIED IN PART.

Largely because of the 2007 Settlement embodied in the Form 870-AD executed by the parties and the extensive stipulations of fact, no genuine issues of fact exist requiring trial. Dominion's claim for refund based upon disallowance of a deduction for interest computed on the basis in associated property, as required to be capitalized for improvements made in 1996 to the Possum Point and Mount Storm generating units under Treas. Reg. § 1.263A-11(e), is denied, as is the government's counterclaim based upon reopening the 2007 Settlement because of an alleged mistake.  In essence, the parties are maintained in their current positions.

The clerk shall enter final judgment for the government on Dominion's claim and for Dominion on the government's counterclaim.

No costs.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge